2017 ND 195

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Duane Francis AZURE, Jr., Defendant and Appellant**

No. 20160402

Supreme Court of North Dakota.

Filed 7/31/2017

Ryan J. Thompson, Rolette County State's Attorney, Rolla, ND, for plaintiff and appellee.

William R. Hartl, Rugby, ND, for defendant and appellant.

VandeWalle, Chief Justice.

[¶ 1] Duane Azure, Jr., appealed a criminal judgment entered after a jury found him guilty of aggravated assault. Azure argues the district court abused its discretion by allowing two prior statements of the State's witness into evidence at trial. Because the district court abused its discretion in allowing the victim's prior statement to Agent Kluth into evidence under North Dakota Rules of Evidence 801(d)(1)(B), we reverse and remand.

## I.

[¶ 2] On April 20, 2014, a deputy was sent to Duane Azure, Sr.'s residence after law enforcement received numerous calls from the residence with no response from the caller. When the deputy arrived at the residence, Duane Azure, Jr. was at the door. When asked if anyone called 911 from the residence, Azure directed the deputy to the living room. The deputy observed Yvette Belgarde lying on the floor in the living room. The deputy requested an ambulance to the residence and Belgarde was transported to the local emergency room. Her initial explanation to law enforcement and medical personnel about her injuries was that she fell on the deck. Approximately two weeks later, while in the hospital, Belgarde contacted law enforcement and stated her injuries were not caused by falling on the deck, but by Azure assaulting her. Belgarde was interviewed by Agent Allen Kluth of the North Dakota Bureau of Criminal Investigation. Belgarde restated to Agent Kluth that Azure had assaulted her and that she was afraid to say anything at first. Azure was subsequently charged with aggravated assault.

[¶ 3] During the preliminary hearing, Azure called Belgarde as a witness. On direct examination, Azure attempted to solicit testimony from Belgarde to indicate she had fabricated the allegations of the assault to better her position in a potential claim against the property owners for damages. Azure also questioned Belgarde on the two different explanations she gave for her injuries—falling on the deck and being assaulted by Azure. The district court found probable cause existed and set the case for trial. However, prior to trial, Belgarde died from causes unrelated to the assault.

[¶ 4] Because of Belgarde's death, the State moved the district court to allow Belgarde's testimony from the preliminary hearing and statements she made to Agent Kluth at the hospital in the State's case-in-chief. Azure objected. The district court granted the State's motion and the evidence was allowed in at trial. The jury subsequently found Azure guilty of aggravated assault.

[¶ 5] On appeal, Azure argues the district court erred by: (1) allowing Belgarde's preliminary hearing testimony into evidence at trial; (2) allowing Agent Kluth to testify to the statements Belgarde made to him at the hospital; and (3) denying his motion for judgment of acquittal.

## II.

[¶ 6] "A district court has broad discretion in evidentiary matters, and we will not overturn a district court's decision to admit or exclude evidence unless the court abused its discretion. The abuse of discretion standard therefore applies when reviewing a district court's evidentiary rulings under the hearsay rule." *State v. Vandermeer*, 2014 ND 46, ¶ 6, 843 N.W.2d 686 (citing *State v. Jaster*, 2004 ND 223, ¶ 12, 690 N.W.2d 213).

### A.

[¶ 7] Prior to Azure's trial, the State moved the district court to allow Belgarde's preliminary hearing testimony into evidence under Rule 804 of the North Dakota Rules of Evidence. The district court granted the State's motion.

[¶ 8] Rule 804 allows for hearsay evidence to be admitted when the declarant is unavailable as a witness if the testimony:

(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

(B) is now offered against a party who had, or, in a civil case, whose predecessor in interest had, an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

N.D.R.Ev. 804(b)(1). It does not matter that "the defendant may have had significantly less incentive to cross-examine the witness at the preliminary examination hearing than at the trial[,]" the testimony is permissible at trial if it meets the requirements under Rule 804. *State v. Garvey*, 283 N.W.2d 153, 156 (N.D. 1979).

[¶ 9] Azure argues he did not have a similar motive when he conducted his direct examination of Belgarde at the preliminary hearing as he would have had during the trial. He argues that at the preliminary hearing, his motive was to "establish that Yvette Belgarde had conspired and concocted the story alleging Azure had assaulted her in an effort to pursue a civil suit for aggravated assault," while he never raised such allegations at the trial.

[¶ 10] In allowing the testimony at trial, the district court found:

> The defense attorney had questioned [Belgarde] regarding the statements she had made about the identity of the Defendant as being the individual who assaulted her, and questioned her regarding other inconsistent statements she made. The Court does find that the defendant had the opportunity and motive to develop her testimony[.]

[¶ 11] Azure's questioning at the preliminary hearing was to discredit Belgarde by showing she had made inconsistent statements and had an ulterior motive—to position herself favorably in a civil lawsuit. Azure solicited testimony from Belgarde that she had originally told law enforcement and medical personnel that she sustained her injuries from falling on a deck and that it wasn't until almost two weeks later that she alleged Azure had assaulted her. It is clear from the record that Azure's motive for questioning Belgarde at the preliminary hearing was to show she had lied about being assaulted by Azure. Azure does not state what line of questioning he would have had if she had testified at trial; rather, he simply concludes he "would have numerous other questions for Yvette Belgarde [during the trial]." Azure has failed to show how his motivation to question Belgarde at trial, if she had testified, would have been different than his motive of questioning Belgarde at the preliminary hearing. Therefore, the district court did not abuse its discretion in allowing Belgarde's testimony from the preliminary hearing into evidence.

### B.

[¶ 12] Azure's second argument is the district court abused its discretion in allowing Agent Kluth to testify about statements Belgarde made to him at the hospital about the assault under Rule 801(d)(1)(B). Rule 801(d)(1)(B) states:

> (d) Statements that are not hearsay. A statement that meets the following conditions is not hearsay:
>
> (1) A declarant-witness's prior statement. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
>
> . . .
>
> (B) is consistent with the declarant's testimony and is offered;
>
>> (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or
>>
>> (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground[.]

Testimony admitted under Rule 801(d)(1)(B) can be used as substantive

evidence to rebut an alleged motive; however, a prior consistent statement is not to be admitted simply to bolster a discredited witness or to counter all forms of impeachment. *Tome v. U.S.*, 513 U.S. 150, 157, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995).

[¶ 13] Azure argues the district court erred in admitting Agent Kluth's testimony because Belgarde did not testify at the trial, nor was she subject to cross-examination. Conversely, the State argues Belgarde was not required to testify at trial because she testified at the preliminary hearing and was subject to cross-examination of her statements at that time. Therefore, the question before us is whether the declarant must testify and be subject to cross-examination, at the trial itself, before the declarant's prior consistent statements are admissible under Rule 801(d)(1)(B).

[¶ 14] This is a question of first impression for this Court. Because the language of N.D.R.Ev. 801(d)(1)(B) and Rule 801(d)(1)(B) of the Federal Rules of Evidence is identical, we consider federal precedent interpreting Rule 801 persuasive. *Cf. State v. Randall*, 2002 ND 16, ¶ 5, 639 N.W.2d 439.

[¶ 15] In its discussion of whether prior statements should be classified as hearsay, the Advisory Committee Notes of F.R.Ev. 801(d)(1)(B) state: "[c]onsiderable controversy has attended the question whether a prior out-of-court statement by a person now available for cross-examination concerning it, under oath and in the presence of the trier of fact, should be classed as hearsay." (Emphasis added).

[¶ 16] The Advisory Committee Notes on F.R.Ev. 801(d)(1)(A) and (C) on this question are informative because of the structure of the rule. Rule 801(d)(1) outlines the requirement that the "declarant testifies and is subject to cross-examination about a prior statement" before subdividing the exception into its three parts—inconsistent statements, consistent statements, and identification. The Advisory Committee quoted the California Law Revision Commission in discussing its reasoning for adopting 801(d)(1)(A):

Section 1235 admits inconsistent statements of witnesses because the dangers against which the hearsay rule is designed to protect are largely nonexistent. The declarant is in court and may be examined and cross-examined in regard to his statements and their subject matter.... The trier of fact has the declarant before it and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, it is in as good a position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court.

[¶ 17] Additionally, the language of the rule alone indicates the declarant's presence at trial is required. Rule 801(d)(1)(B) states: "[t]he declarant testifies and is subject to cross-examination[.]" (Emphasis added). The present tenses included in the rule signals the temporal connection between the witness's testimony and the offering of a consistent statement.

[¶ 18] Lastly, we note the prevalence in the Federal circuit courts of the requirement that the declarant testify at trial. A review of the circuit courts reveals the majority of the courts either expressly state the declarant must testify at the trial or imply the same by stating the declarant was present and testified at the trial. *See United States v. Frazier*, 469 F.3d 85, 88 (3d Cir. 2006) (noting four requirements under 801(d)(1)(B), the first being "the declarant must testify at trial and be subject to cross-examination[.]"); *Dillon v. Warden, Ross Correctional Inst.*, 541 Fed. Appx. 599, 605 (6th Cir. 2013) (Defendant's prior consistent statements are only ad-

missible under Rule 801(d)(1)(B) if defendant testified at trial.); *United States v. Ruiz*, 249 F.3d 643, 647 (7th Cir. 2001) (the statement is admissible under Rule 801(d)(1)(B) if "the declarant testifies at trial and is subject to cross examination ... [and] his prior statement is indeed consistent with this trial testimony[.]"); *United States v. Collicott*, 92 F.3d 973, 979 (9th Cir. 1996) (stating: "the declarant must testify at trial and be subject to cross-examination[.]"); *United States v. Piva*, 870 F.2d 753, 758 (1st Cir. 1989) (stating "the declarant must be *available* for cross-examination" and allowed the testimony because "there [was] no indication in the record that the defense was precluded from recalling [the declarant] for re-cross[.]") (emphasis in original).

[¶ 19] After reviewing the Advisory Committee Notes for the Federal Rules of Evidence, the language of Rule 801(d), and circuit court decisions, we are convinced that if a prior consistent statement is to be admitted under Rule 801(d)(1)(B), the declarant must testify and be subject to cross-examination at the trial or hearing at which it is being offered. This ensures that the trier of fact has the opportunity to observe any cross-examination of the declarant about his or her prior consistent statement.

[¶ 20] Belgarde did not testify and was not subject to cross-examination during the trial. Azure did not have the opportunity to cross-examine Belgarde in the presence of the trier of fact. Therefore, we hold the district court abused its discretion in allowing Agent Kluth to testify about statements Belgarde made while she was in the hospital.

[¶ 21] The State also argues the cross-examination element was met because Agent Kluth was subject to cross-examination at trial. Rule 801(d)(1) requires the opportunity to cross-examine the declar-ant, Belgarde, not the witness, Agent Kluth. Therefore, the State's argument is without merit.

[¶ 22] However, a district court's evidentiary error does not necessitate a reversal and remand for a new trial if the error was a "harmless error." *City of Grafton v. Wosick*, 2013 ND 74, ¶ 12, 830 N.W.2d 550. North Dakota Rules of Criminal Procedure 52(a) states: "[a]ny error, defect, irregularity or variance that does not affect substantial rights must be disregarded." "If evidence was admitted in error, this Court will consider the entire record and decide in light of all the evidence whether the error was so prejudicial the defendant's rights were affected and a different decision would have occurred absent the error." *State v. Doppler*, 2013 ND 54, ¶ 21, 828 N.W.2d 502 (quotation omitted). "Erroneously admitted evidence which is cumulative to other properly admitted evidence is not prejudicial, does not affect substantial rights of the parties, and accordingly, is harmless error." *State v. Leinen*, 1999 ND 138, ¶ 17, 598 N.W.2d 102.

[¶ 23] Agent Kluth's testimony about Belgarde's statements to him corroborate her testimony at the preliminary hearing. However, Agent Kluth's testimony contained substantially more details of the assault than Belgarde's testimony at the preliminary hearing. Additionally, Agent Kluth testified to information not included in Belgarde's preliminary hearing testimony, such as: the events throughout the day leading up to the assault, Belgarde did not report the assault right away because Azure was intoxicated and she feared for the deputy's safety if the deputy tried to arrest him at that time, it took her over an hour to crawl into the house to get to a phone, Azure came and went from the residence numerous times while she struggled to get inside, she asked Azure for

assistance and to call the hospital or ambulance three times but he did not call, and Azure laughed and thought she was faking her injury.

[¶ 24] Agent Kluth's testimony was not merely cumulative to the other evidence submitted during the trial and included substantially more details than Belgarde's testimony at the preliminary hearing. Upon review of the record, we cannot say that including Agent Kluth's testimony was harmless.

### C.

[¶ 25] Azure argues the district court abused its discretion in denying his motion for acquittal due to insufficiency of the evidence. If a defendant's conviction is reversed because of insufficient evidence, the double jeopardy clause of the Fifth Amendment to the United States Constitution bars retrial of the case. *State v. Kringstad*, 353 N.W.2d 302, 306 (N.D. 1984). In reviewing a district court's denial of a motion for acquittal due to insufficiency of the evidence:

> We look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt.

*State v. Putney*, 2016 ND 59, ¶ 8, 877 N.W.2d 28 (quoting *State v. Rufus*, 2015 ND 212, ¶ 6, 868 N.W.2d 534). "When the verdict is attacked and the evidence is legally sufficient to sustain the verdict, we will not disturb the verdict and judgment even though the trial included conflicting evidence and testimony." *State v. Nakvin-*

*da*, 2011 ND 217, ¶ 12, 807 N.W.2d 204. "[T]he defendant must show the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt." *State v. Gonzalez*, 2000 ND 32, ¶ 14, 606 N.W.2d 873.

[¶ 26] A jury found Azure guilty of aggravated assault in violation of N.D.C.C. § 12.1-17-02(1). Section 12.1-17-02(1) states: "A person is guilty of a class C felony, except if ... the victim suffers permanent loss or impairment of the function of a bodily member or organ in which case the offense is a class B felony, if that person: (1) Willfully causes serious bodily injury to another human being[.]"

[¶ 27] Azure argues, that without the hearsay evidence discussed in the prior two sections, there is insufficient evidence to support his conviction. However, as discussed above, Belgarde's prior statements in the preliminary hearing were admissible at trial. During the trial, the following testimony from Belgarde's preliminary hearing testimony was read into evidence:

> So I was going up the stairs, [Azure] jumps out of the vehicle and is running after me and he grabbed me and I just told him to stop. Just don't touch me, leave me alone and he started grabbing me and literally throwing me up against the house and as I would fall back he would kick me and then he would do it again. I would say probably five or six different times. And then—and then I tried to get up and I collapsed on the deck and at that time he told me that I should just throw you over this deck and basically kill you. And ... then a matter of a minute or so they jumped back in the vehicle and went and they left me out on the porch.

[¶ 28] Additionally an orthopedic surgeon testified Belgarde suffered from a fractured dislocation of her hip. The doctor also testified he observed bruising on Bel-

garde's arm which was not ·consistent with her story of a fall but, rather, from being roughly treated. This evidence, viewed in the light most favorable to the verdict, permits a reasonable inference of guilt. Therefore, there was sufficient evidence to support the jury's verdict.

### III.

[¶ 29] Because the district court abused its discretion in allowing Agent Kluth to testify to Belgarde's statements under Rule 801(d)(1)(B) and it was not a harmless error, we reverse the judgment and remand for a new trial.

[¶ 30] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte